J-S47034-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONNIE EUGENE JOHNSON, | : | |
| | : | |
| Appellant | : | No.  1774 MDA 2014 |

Appeal from the Judgment of Sentence Entered June 12, 2014,
in the Court of Common Pleas of Huntingdon County,
Criminal Division, at No(s): CP-31-CR-0000028-2013

BEFORE:    ALLEN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED AUGUST 14, 2015**

Ronnie Eugene Johnson (Appellant) appeals from the judgment of sentence imposed following his conviction for aggravated assault.  We affirm.

On December 18, 2012, Appellant, then an inmate at the State Correctional Institution at Smithfield (SCIS), was charged with various offenses stemming from an attack on corrections officer (C.O.) Jeremy Yeoman.  Following a preliminary hearing on January 9, 2013, all charges were bound over for court.  Appellant's court-appointed counsel filed an omnibus pre-trial motion and a motion for discovery on February 19, 2013.

*Retired Senior Judge assigned to the Superior Court.

The trial court scheduled a hearing on both motions for March 28, 2013. That hearing was rescheduled by the trial court for April 11, 2013.[1]

On April 12, 2013, the Commonwealth filed a motion for joinder, seeking to join the cases of Appellant and another inmate involved in the December 18, 2012 altercation. This motion was granted, and a joint jury trial was scheduled for November 4, 2013.

On August 30, 2013, Appellant *pro se* filed a motion indicating his desire to waive representation by counsel. In light of this motion, Appellant's court-appointed attorney filed a motion to withdraw. On October 31, 2013, following a hearing, the trial court granted both motions and permitted Appellant to proceed *pro se* with court-appointed stand-by counsel. Trial was scheduled for January 13, 2014. However, due to stand-by counsel's unavailability, trial was rescheduled for February 3, 2014. Jury selection was canceled on February 3, 2014 due to severe weather and rescheduled for the next available date: March 3, 2014.

On February 4, 2014, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. On March 18, 2014, following a hearing, the trial court denied Appellant's motion.

Appellant's jury trial commenced on March 21, 2014. That same day, Appellant was found guilty of one count of aggravated assault.[2] On June 12,

---

[1] The record does not indicate whether this hearing took place on April 11, 2013.

2014, he was sentenced to 18 to 36 months' incarceration to run consecutively to the sentence he was currently serving. Appellant filed timely post-sentence motions, which were denied on September 19, 2014. This timely appeal followed.

On appeal, Appellant challenges the sufficiency of the evidence, as well as the trial court's denial of his motion to dismiss under Pa.R.Crim.P. 600. Appellant's Brief at 4.[3]

We begin by addressing Appellant's argument that the evidence was insufficient to support his conviction for aggravated assault under 18 Pa.C.S. § 2702(a)(3). Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no

---

[2] Appellant's co-defendant also was convicted.

[3] Appellant also contends that the Commonwealth "did not establish a case verse [*sic*] a human being and ignored the issue of identification when they charged a juristic person" with the aforementioned offenses. Appellant's Brief at 9. The gist of this underdeveloped argument seems to be that the Commonwealth somehow misidentified Appellant, "a free thinking flesh and blood human being of Moorish descent," as the perpetrator of this crime. *Id.* As set forth in greater detail below, the evidence presented at trial was sufficient to prove that Appellant was the individual who assaulted C.O. Yeoman. Accordingly, this claim is without merit.

probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (citations and quotations omitted).

With respect to Appellant's conviction, the statute provides, in relevant part, that "[a] person is guilty of aggravated assault if he … attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]" 18 Pa.C.S. § 2702(a)(3). The persons enumerated in subsection (c) include correctional officers. 18 Pa.C.S. § 2702(c)(9). "Bodily injury" is defined as "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

The trial court summarized the relevant trial testimony as follows.

[On December 8, 2012, a]t or around 7:45 a.m., [Appellant] was in the dining hall at SCIS having breakfast. [C.O.] Jeremy Yeoman testified that he saw another inmate at another table pass a banana to [Appellant]. [C.O.] Yeoman related that while [Department of Corrections] rules allow inmates to pass food to other inmates seated at their table, the rules prohibit the passing of food from table to table.

[C.O.] Yeoman testified that he approached [Appellant] about the rule infraction. An argument ensued, according to C.O. Yeoman, but ultimately [Appellant] gave up the banana.

[C.O.] Yeoman said he started to walk away but [Appellant] kept shouting profanities at him. This prompted [C.O.] Yeoman to turn back and order [Appellant] to leave the dining hall.

At this point, according to [C.O.] Yeoman, [Appellant] stood, closed his fist and struck [C.O. Yeoman] in the face. Another C.O. - William Boyd - came to the aid of [C.O.] Yeoman and together they subdued [Appellant]. [C.O.] Yeoman could not say how many times [Appellant] struck him in the face prior to his being subdued.

During the time [Appellant] was physically engaged with [C.O.] Yeoman, another inmate - Rexford Miles Hunt - became involved. C.O. Boyd testified that he was standing ten (10) to fifteen (15) feet away and saw [Appellant] strike [C.O.] Yeoman. [C.O.] Boyd said he immediately notified the prison control center, and then went to assist [C.O. Yeoman]. At this point, he said, [defendant] Hunt got up from his table and starting hitting C.O. Yeoman in the back of the head. [Defendant] Hunt, [C.O. Boyd] said, took a swing at [Boyd] and was taken down by C.O. Deline.

The evidentiary presentation of the Commonwealth was remarkable in that the fight described by the witnesses was captured on video so the jury was able to watch the event several times. In this regard, Lt. Bradley Booher, the security lieutenant at SCIS, testified that there are security cameras throughout the institution that are linked to a Bosch recording system that in turn is linked to a computer. [] Lt. Booher related that there are three (3) cameras in the dining room. On December 8, 2012, he said he was able to retrieve from the computer the security footage from the dining hall and transfer it to a DVD.

The Commonwealth proffered photographs of [C.O.] Yeoman which depicted the injuries he sustained that morning. He testified to a concussion which he said caused him to miss five (5) months' work and forces him to take medication daily.

Trial Court Opinion, 9/19/2014, at 2-4 (footnote omitted).

In his brief, Appellant contends that "following the earnest relinquishment of the banana" C.O. Yeoman "became extremely agitated because [Appellant] asked him a question," after which a "mutual fight" ensued, resulting in "abrasions" to C.O. Yeoman's forehead. Appellant's Brief at 5. Appellant argues that this evidence was insufficient to sustain his conviction because: 1) "the trial court did not rely on any verified medical reports" to support the Commonwealth's theory; 2) C.O. Yeoman's injuries were "self-inflicted" when he tackled Appellant and pressed his head into Appellant's corduroy jacket; and 3) no weapons were used during the assault. *Id.* at 10. We disagree.

The record belies Appellant's first two contentions. At trial, the Commonwealth introduced the testimony of Alissa Cutler, a registered nurse at SCIS, who corroborated C.O. Yeoman's description of his injuries and testified that she "sent him to the ER" because of his head injury. N.T., 3/21/2014, at 88-90. On cross-examination, Appellant, through counsel, introduced the medical incident report completed by Nurse Cutler into evidence as defense exhibit 2. *Id.* at 90-91.

Appellant does not deny fighting with C.O. Yeoman, rather he contends they were mutual combatants. The term "'mutual combat' infers that both parties 'agreed' to fight and that there was no aggressor. ***Commonwealth v. Cannon***, 19, 563 A.2d 918, 922 (Pa. Super. 1989). Such is not the case here. Moreover, this version of events is not borne out in either the

testimony or in the video of the incident. N.T., 3/21/2014, at 30, 39-55, 80-86.

Moreover, it is well established that whether the officer's injuries constitute a "bodily injury" for purposes of section 2702(a)(3) is irrelevant since, in a prosecution for aggravated assault on a C.O., the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury. *Commonwealth v. Marti*, 779 A.2d 1177, 1183 (Pa. Super. 2001). Regardless of whether the abrasions suffered by C.O. Yeoman were in any way due to his actions in the altercation, it was well within the jury's province to find that Appellant, by punching C.O. Yeoman in the face, intended to cause injury to the officer. Finally, contrary to Appellant's argument, possession or use of a weapon is not required for a finding of bodily injury. 18 Pa.C.S. § 2301.

Thus, viewing the evidence in the light most favorable to the Commonwealth, as our standard of review requires, we conclude that the evidence was sufficient to enable the jury to find that Appellant violated subsection 2702(a)(3).

In his final issue, Appellant challenges the trial court's denial of his motion to dismiss under the "speedy trial rule," Pa.R.Crim.P. 600.[4] Appellant's Brief at 8.

"In evaluating Rule 600 issues, our standard of review of a trial court's

---

[4] Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600. Prompt Trial**

(A) Commencement of Trial; Time for Trial

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

* * *

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600.

decision is whether the trial court abused its discretion." ***Commonwealth v. Hunt***, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*). Further, we note:

> The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> * * *
>
> **So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime**.

***Id.*** at 1238-39 (internal citations and quotation marks omitted) (emphasis added).

Instantly, for Rule 600(A)(2) purposes, the Commonwealth was required to bring Appellant to trial on or before December 18, 2013. Appellant was tried on March 21, 2014. Thus, a total of 458 days elapsed from the time the complaint was filed until the date of trial. Appellant maintains that the Commonwealth did not exercise due diligence at various points pre-trial resulting in a violation of Rule 600. Appellant's Brief at 8.

Appellant takes issue specifically with the February 3, 2014 continuance and resulting 22-day delay, which occurred due to stand-by counsel's unavailability. *Id.* Appellant contends that he was ready to proceed *pro se* on that date, having been granted "first seat counsel status" on October 31, 2013. *Id.*

> It is well-settled that
>
> [t]he Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time, and the Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. As has been oft stated, [d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort. We must therefore determine whether the aforesaid violation occurred because of the Commonwealth's failure to exercise due diligence in bringing Appellant's case to trial, or whether it was the result of factors beyond the Commonwealth's control, despite its exercise of due diligence.

*Commonwealth v. Colon*, 87 A.3d 352, 359 (Pa. Super. 2014) (citations and quotations omitted).

With respect to Appellant's specific contentions, the Comment to the Rule provides "[f]or purposes of paragraph (C)(1) and paragraph (C)(2), the following periods of time, that were previously enumerated in the text of former Rule 600(C), are examples of periods of delay caused by the defendant. . . . (3) such period of delay at any stage of the proceedings as results from either the unavailability of the defendant or the defendant's attorney or any continuance granted at the request of the defendant or the

defendant's attorney." Accordingly, we cannot agree that the delay due to the unavailability of stand-by counsel was due to the Commonwealth's lack of due diligence.

However, even if such time were not excludable, we agree with the trial court that the trial in this matter commenced within the 365 days properly attributable to the Commonwealth. The trial court reasoned that the 62-day delay between the filing of Appellant's August 30, 2013 motion to waive all representation and the October 31, 2013 hearing to decide the issue was in no way attributable to any lack of due diligence by the Commonwealth and, therefore, was excludable under the Rule. Trial Court Opinion, 9/19/2014, at 7. Similarly, the court held that the 28-day delay resulting from the cancelation of jury selection due to inclement weather on February 3, 2014 and the rescheduling of the case until the next available trial date, March 3, 2014, was excludable. *Id.* Finally, the court determined that the filing of Appellant's *pro se* Rule 600 motion on February 4, 2014, tolled the time under the Rule until the Court issued its ruling on March 18, 2014, resulting in an additional 15 days of excludable time. We discern no error on the part of the trial court in making these determinations. Computing the time as required by Rule 600(C)(1) reveals that the Commonwealth brought Appellant to trial within 365 days. Accordingly, we hold that the court's denial of Appellant's Rule 600 motion was not an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2015